IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| FRANK CHARLES ELDRIGE, JR., § <br> TDCJ No. 2066581, § <br> § <br> Petitioner, § <br> § <br> v. § <br> § <br> DIRECTOR TDCJ - CID, § <br> § <br> Respondent. § | Civil Action No. 7:18-cv-00163-O-BP |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the petition for a writ of habeas corpus petition, ECF No. 1, filed by Frank Charles Eldrige, Jr. ("Petitioner") pursuant to 28 U.S.C. § 2254 on November 15, 2018; Respondent's Response, ECF No. 15, filed on May 8, 2019; the Administrative Record, ECF No. 13, filed on May 8, 2019; and Petitioner's Reply, ECF No. 18, filed on June 7, 2019. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Petitioner's petition.

**I.     PROCEDURAL BACKGROUND**

Petitioner was found guilty by the jury of aggravated assault with a deadly weapon. ECF No. 13-28 at 25-29. Following the verdict, the 24th District Court of Victoria County, Texas sentenced him to life imprisonment. *Id.* at 27. Petitioner filed a direct appeal to the Thirteenth Court of Appeals of Texas ("COA"), which affirmed his conviction on July 20, 2017. *Eldrige v. State*, No. 13-16-00250-CR, 2017 WL 3084284 (Tex. App.—Corpus Christi-Edinburg July 20, 2017, pet. ref'd). Thereafter, Petitioner filed a petition for discretionary review ("PDR") in the Texas Court of Criminal Appeals ("TCCA"), which was refused on December 20, 2017. *Id.*

Petitioner did not petition the Supreme Court of the United States for a writ of certiorari. ECF No. 1 at 3.

On May 2, 2018, Petitioner filed an application for a state writ of habeas corpus. ECF No. 13-27 at 5-47. The TCCA denied the application without written order. ECF No. 13-18. Petitioner then filed the instant petition on November 15, 2018, alleging that his Fourteenth Amendment due process rights were violated because there was insufficient evidence to support his conviction. ECF No. 1 at 6-7. Specifically, he argues that he should not have been convicted of anything other than simple assault causing bodily injury because that is the only count that the prosecution's evidence proved. *Id.* at 16-17. Petitioner also claims that the prosecution engaged in improper opening statement and closing argument that confused the jury. *Id.* at 18. Finally, Petitioner contends that certain witnesses were unqualified to testify as experts regarding whether Petitioner's hands could be considered to be deadly weapons. *Id.* at 21.

## II.    FACTUAL BACKGROUND

The undersigned adopts the COA's statement of the facts. *Eldrige*, 2017 WL 3084284, at *1-2. Those facts are as follows:

> Victoria Police Officer Francis Reyes testified that he responded to a call shortly after 5:00 a.m. on June 21, 2015 to a residence on Crockett Avenue. Once there, he came in contact with a woman who told the officer that her husband had detained someone in the kitchen of the residence. Once inside the residence, Officer Reyes observed a house in "complete disarray" and encountered an individual named John Kelly Demoney (Kelly) holding Eldridge in a headlock on the floor of the kitchen. Officer Reyes told jurors that he perceived the scene to be "dangerous" and called for backup. Kelly told Officer Reyes that he did not want to release

Eldridge because he was afraid that he would assault others. According to Officer Reyes, Eldridge was nude from the waist down. Officer Robert Nichols arrived a short time later to assist Officer Reyes in handcuffing Eldridge and taking him into custody. Officer Reyes testified that based on his experience, Eldridge's behavior exhibited someone who was under the influence of either drugs, alcohol, or a combination of the two. Officer Reyes later made contact with fifty-seven-year old Deborah Demoney (Deborah), who lived at the Crockett residence and appeared to be bleeding from her eyes.

Deborah testified that she had known Eldridge for approximately fifteen years because he was a close friend of her now-deceased daughter, Janice. Deborah stated that after years of no contact, Eldridge unexpectedly appeared at her home on Crockett sometime in June 2015. Because of their prior relationship, Deborah allowed Eldridge to visit and stay in the home during the day, but she did not allow Eldridge to spend the night. On the evening of June 20, 2015, Deborah recalled that Eldridge left their home at approximately 10:30 p.m. that evening, and she turned in for the evening. Later, in the early morning hours of June 21, 2015, Deborah awoke to the sound of her locked exterior bedroom door, which led to her backyard, being opened and Eldridge appearing. Deborah told jurors that she asked Eldridge what he was doing at her home, and he told her, "Don't worry about it." According to Deborah, Eldridge then wandered around the house, and Deborah tried to stop him in order to protect her grandson, who was in the house. At that point, she again asked Eldridge what was wrong with him, causing him to "[double-up] his fists," charge at Deborah, begin hitting her, and knocked her down to the ground.

3

Jacob Demoney (Jacob), age seventeen at the time of trial, testified that he lived with his grandmother Deborah, his uncle Kelly, his nephew, and his brother. He recalled that he awoke the morning of June 21, 2017 from the commotion. Jacob heard Eldridge yell obscenities at Deborah and observed Eldridge begin to beat her up. Jacob testified that upon witnessing this, he woke up Kelly to help with the situation.

Deborah's personal physician Dr. Klawitter testified that she treated Deborah two days after the incident. Dr. Klawitter noted that Deborah suffered from numerous bruises around her eyes and face, and had trouble staying awake in her office as well as concentrating. Dr. Klawitter testified that Deborah suffered from a concussion as a result of this incident and opined that a concussion is the result of a "large amount of force" inflicted upon someone. According to Dr. Klawitter, Deborah suffered from some short-term urinary incontinence due to her head injury, and she also suffered from an eye condition, which required specialized care from an optometrist. Dr. Valerie Baker, an optometrist, testified that she treated Deborah shortly after the incident. Dr. Baker told jurors that her assessment of Deborah revealed that she suffered from an inflammation in her left eye, which affected her vision.

Eldridge did not testify and did not call any witnesses. After deliberations, the jury found Eldridge guilty of aggravated assault with a deadly weapon and acquitted him of the remaining charges. The trial court conducted a bench trial on the issue of punishment and found the State's enhancement allegations true. As a

> result, the trial court assessed Eldridge's punishment at life imprisonment with the Texas Department of Criminal Justice—Institutional Division.

*Id.*

### III. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> a federal court may grant a state prisoner's application for a writ of habeas corpus if the state-court adjudication pursuant to which the prisoner is held resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

*Howes v. Fields*, 565 U.S. 499, 505 (2012) (quotation marks omitted) (quoting 28 U.S.C. § 2254(d)(1)).

> [A] state court decision is contrary to . . . clearly established [federal law] if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quotation marks omitted). "It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

To obtain habeas relief under § 2254, "a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for [fair-minded] disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quotation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

5

IV. **ANALYSIS**

Petitioner challenges his conviction on two grounds. First, he argues that the state courts denied him his fundamental rights under the due process clause of the Fourteenth Amendment by affirming his conviction for aggravated assault with a deadly weapon without sufficient evidence. ECF No. 1 at 16-22. Next, Petitioner argues that the prosecution engaged in misconduct by providing an improper opening statement and closing argument and offering unqualified witness testimony regarding whether Petitioner's hands could be considered to be deadly weapons. *Id.* at 18-22. Respondent disputes both claims and further moves the Court to transfer venue to the United States District Court for the Southern District of Texas, Victoria Division.

### A. Venue is Proper in the Wichita Falls Division of this Court

Petitioner is incarcerated in the James V. Allred Unit of the Texas Department of Criminal Justice in Iowa Park, within the Wichita Falls Division of this district. ECF No. 1 at 1. Venue is proper in this district because incarcerated persons such as Petitioner "may file federal habeas corpus petitions in the district either where they are confined or where they were convicted." 28 U.S.C. § 2241(d). Respondent moves to transfer venue to the Victoria Division of the Southern District of Texas—the district and division where Petitioner was convicted. ECF No. 15 at 1-2. In support of this request, Respondent argues that the Victoria Division would be a more convenient forum for witnesses should an evidentiary hearing be necessary. *Id.* Although Petitioner could have filed his petition in the Victoria Division, the parties would not be inconvenienced by retaining venue in the Wichita Falls Division. Respondent has filed the state court records and the undersigned finds there are no factual allegations that need to be resolved through an evidentiary hearing. Therefore, the undersigned concludes that Respondent's motion to transfer venue should be denied.

### B. Petitioner's Claim of Insufficient Evidence is Barred Because He Did Not Raise It on Direct Appeal.

Normally, a petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997). If the last state court to consider the claims expressly based its denial of relief on independent and adequate state procedural grounds, the petitioner's claims are considered to have been defaulted, and federal habeas review is barred unless the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law or shows that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Furthermore, under Texas law, a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised for the first time in a state habeas petition. *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

The TCCA has held it will not consider in habeas proceedings any record-based claims that the petitioner did not raise on direct appeal. *Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1996), *clarified on reh'g* (Feb. 4, 1998). When the TCCA is silent on its reasoning for denying an applicant's sufficiency claim raised for the first time on state habeas petition, this Court may assume that the claim was denied because it is not cognizable. *Ex parte Grigsby*, 137 S.W.3d at 674. The Fifth Circuit has also recognized Texas's procedural rule barring consideration of record-based claims not raised on direct appeal to be an adequate state ground for barring federal habeas review. *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007) (citing *Ex parte Gardner*, 959 S.W.2d at 191); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (recognizing that under Texas law a sufficiency claim may be raised on direct appeal but not in a habeas corpus proceeding).

Petitioner filed a direct appeal to the state COA, a PDR to the TCCA, and a state habeas

petition to the TCCA. ECF No. 1 at 3-4. As a result, he has exhausted his state remedies as to any claim presented in those state actions. The state court record shows that Petitioner did not challenge the sufficiency of the evidence on direct appeal of his state conviction. *Eldrige*, 2017 WL 3084284. He did, however, raise this claim in his state habeas application, which the TCCA subsequently denied without written order. ECF No. 13-27 at 5-47; ECF No. 18. Consequently, Petitioner's claim that there was insufficient evidence to convict him of anything other than simple assault causing bodily injury is barred from federal habeas review unless Petitioner can demonstrate cause for the default and actual prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Petitioner has failed to make such a showing. Consequently, the undersigned finds that Petitioner's sufficiency claim argued in grounds one and two are procedurally barred from the Court's review.

### C. Petitioner's Prosecutorial Misconduct Claim Is Without Merit Because the Prosecutor's Statements in the Opening Statement and Closing Argument Were Proper and the Witnesses Were Qualified to Testify.

A claim of prosecutorial misconduct is actionable on federal habeas review only when the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Due process is only violated when the alleged conduct deprived the petitioner of his right to a fair trial. A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted. *Styron v. Johnson,* 262 F.3d 438, 454 (5th Cir. 2001). Generally, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Darden, 477 U.S. at 181.* The conduct must either be so persistent and pronounced, or the evidence so

insubstantial that, but for the remarks, no conviction would have occurred. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1985) (*per curiam*).

### 1. Improper Opening Statement and Closing Argument

In determining whether the prosecutor's comments prejudiced the defendant's substantive rights, the relevant inquiry considers "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (citations and quotation marks omitted). "[P]rosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair[ and s]uch unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002) (citations and quotation marks omitted).

Upon reviewing the state habeas petition that provides a clearer delineation of Petitioner's claim, the undersigned understands Petitioner to argue that the prosecutor provided a personal opinion disguised as fact during the opening statement to the jury that Petitioner was in a sexually violent rage, had committed sexual assault, and had attempted sexual assault. ECF No. 13-27 at 9. However, the record does not support this claim. *See* ECF No. 13-7 at 21-28. Rather than presenting these statements as facts, the prosecutor, as provided by Article 36.01 of the Texas Code of Criminal Procedure, "state[d] to the jury the nature of the accusation and the facts which [were] expected to be proved by the State in support thereof." By stating what the evidence would show and what testimony would be given by the witnesses, the prosecutor simply laid out a road map for the prosecution's case in chief. Therefore, Petitioner has failed to demonstrate that the

9

prosecutor's comments made in the opening statement were improper, and the undersigned finds the prosecutor's opening statement was appropriate considering the evidence presented at trial.

Upon reviewing the state habeas petition for further basis for the claim, the undersigned construes Petitioner to contend in the instant petition that the prosecutor erred when he urged the jury to be voices for society; stated that "[y]ou are the final protectors, arbiters of what's acceptable in your community"; and requested that they "[s]end a message that when you're in Victoria County, Texas, you will protect your citizens, support your local law enforcement, listen to your local doctors." ECF No. 13-8 at 98. However, Petitioner has not shown that these comments were improper. Under Texas law, proper closing argument by the prosecution in criminal trials includes the following: (1) summation of the evidence; (2) reasonable deduction drawn from the evidence; (3) answer to opposing counsel's argument; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). The prosecutor's statements here were pleas for law enforcement and thereby fall within one of the approved general areas of argument. The Fifth Circuit "has held that appeals to the jury to act as the conscience of the community are permissible, so long as they are not intended to inflame." *United States v. Fields*, 72 F.3d 1200, 1208 (5th Cir. 1996). The prosecutor's statements were a mere plea to the jury to carry out its duty and did not serve as an attempt to inflame the jurors. *See id*. Therefore, the undersigned finds that Petitioner is not entitled to habeas relief on this claim.

Because Petitioner has not shown that the prosecutor's comments were improper or that the state court's denial of these claims was based upon an unreasonable determination of the facts or an unreasonable application of clearly established federal law, the undersigned finds Petitioner's claim of prosecutorial misconduct for improper opening statement and closing argument should be denied.

### 2. *Unqualified Testimony*

Expert witnesses may testify in the form of an opinion, with the only limitation being if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. "An opinion is not objectionable just because it embraces an ultimate issue." Tex. R. Evid. 704; *Ex parte Nailor*, 149 S.W.3d 125, 134 n.39 (Tex. Crim. App. 2004). A police officer may testify as a lay witness or an expert witness, according to his experience and training, that he interpreted a defendant's actions as a criminal action. *Williams v. State*, 826 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

In the instant petition, Petitioner complains that the prosecutor utilized the unqualified testimony of witnesses to authenticate that his hands are deadly weapons. ECF No. 1 at 21; *see* ECF No. 13-27 at 13-14. Based on the record, the undersigned understands Petitioner to contest the testimony provided by Officer Reyes, Dr. Klawitter, and Dr. Baker. ECF No. 13-7 at 57-58, 202-03; ECF No. 13-8 at 17. Upon reviewing the extensive training, experience, and qualifications of Dr. Klawitter and Dr. Baker as outlined in the record, the undersigned finds that Petitioner's claim that these witnesses were not qualified to provide this testimony is without merit. ECF No. 13-7 at 34-38, 195-98; ECF No. 13-8 at 9-16. Additionally, the undersigned finds that Officer Reyes's testimony is also qualified, as "[p]olice officers can be expert witnesses with respect to whether a deadly weapon was used." *Tucker v. States*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008).

### V. CONCLUSION

Petitioner has failed to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented. The state court's findings of fact and credibility determinations are entitled to a presumption of correctness, and Petitioner has failed to rebut this presumption.

Because Petitioner has not shown that he is entitled to habeas relief, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Petitioner's § 2254 habeas corpus petition. ECF No. 1.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed **September 30**, **2019**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE